## Appeal of C. R. MACAULAY CO.                  Docket No. 1273.

Depreciation at the rate of two per cent on a reinforced concrete building approved.
A value in excess of that determined by the Commissioner allowed for depreciation and invested capital.

Submitted February 17, 1925; decided April 6, 1925.

*A. I. Gladstone, C. P. A.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, AND SMITH.

FINDINGS OF FACT.

Taxpayer is a corporation organized on July 10, 1912, under the laws of the State of New York with a capital stock of $200,000, divided into 2,000 shares of the par value of $100 each. Its principal office and place of business is at 255 18th St., Brooklyn, N. Y. It is and has been engaged since August 1, 1912, in the business of a wholesale jobber of sash, doors, trim, and molding.

On August 1, 1912, the corporation purchased the entire business of Charles R. Macaulay, paying him therefor 1,995 shares of its capital stock of the par value of $199,500. Among the assets so acquired by the corporation were certain land and a building thereon, which were included at $150,000. Part of the land had been acquired by Charles R. Macaulay in 1890 and the remainder in

1905, together with old dwelling houses and flats located thereon. He razed part of these dwelling houses and flats, sold the others, having them removed from the premises, and held the land at a cost of more than $10,000. On this land he erected in 1905 and 1906 a four-story and basement reinforced concrete building, 100 feet by 100 feet, at a cost of $150,000, exclusive of the cost of elevator machinery and electric equipment, which was installed at a cost of $12,000. The building is of substantial construction of reinforced concrete throughout with 18-inch and 12-inch pilasters, 6-inch and 4½-inch floors and concrete roof, and was designed and erected for the purpose for which it has been used. The first and second floors of the building are used for manufacturing purposes—various planing, shaving, and molding machines being installed on these floors— and the third and fourth floors are used principally as a storage place for stock. The corporation's offices are also located in the building. The machines used were so placed in the building as to cause as little vibration as possible. Subsequent to the year 1913 business increased, necessitating the installation of additional machinery. The building was also equipped with an elevator 10 feet by 16 feet, of 12,000 pounds capacity, which was used for the purpose of carrying wagons loaded with lumber from the first to the upper floors for unloading. The only deterioration noticeable in the building is certain cracks in the concrete supports and beams, claimed to be the result of vibration from machines installed in the building. The building has always been kept in repair, as far as practicable, and the deterioration referred to has occurred since 1913, due to the use of a greater number of machines after that date than before, and the replacement of horse-drawn trucks by motor trucks.

In computing its net income for the calendar year 1919, the taxpayer deducted on account of exhaustion, wear and tear of its building, the amount of $4,500, being three per cent on a value of $150,000, and, in computing its invested capital, included the building therein, together with the land on which it stands, at $150,000, the cost to taxpayer on August 1, 1912. Upon audit of the return, the Commissioner determined the March 1, 1913, value of the building to be $70,000 and of the land to be $10,000, and permitted taxpayer to include the land and building in invested capital at $80,000, and to take a deduction for the exhaustion, wear and tear of the building, of 2 per cent on the valuation of $70,000. The March 1, 1913, values of the land and building were arrived at by taking the assessed values for local tax purposes and adding thereto 25 per cent of said assessed values. The assessed value of the land on March 1, 1913, was $8,000, and of the building $56,000. The assessed values were supposed to be 80 per cent of the market value of the property. The land and the building acquired by the taxpayer from C. R. Macaulay on August 1, 1912, had a total fair market value of at least $150,000 on that date, and had fair market values of $10,000 and $140,000, respectively, on March 1, 1913.

Upon the basis of the disallowance of part of the deduction taken by taxpayer for exhaustion, wear and tear of its building and the adjustment made in its invested capital, the Commissioner determined that there is a deficiency in tax for the year 1919 in the

amount of $1,818.31. Taxpayer was notified of the Commissioner's determination by registered letter mailed November 1, 1924. The petition herein was filed December 20, 1924.

### DECISION.

The determination of the Commissioner is disapproved. The amount of the deficiency to be assessed for the year 1919 will be computed in accordance with the following opinion and will be settled on consent or on ten days' notice under Rule 50.

### OPINION.

LITTLETON: The taxpayer claims in this appeal that the land and building acquired by it from Charles R. Macaulay on August 1, 1912, had a fair market value of $150,000 on that date; that the land had a fair market value of $10,000 and the building a fair market value of $140,000, on March 1, 1913, and that it is entitled to include the land and building in invested capital at $150,000, and in computing its net income for the year 1919, to deduct for depreciation of the building an amount equal to 3 per cent on the valuation of $140,000.

We are of the opinion that the contention of taxpayer as to the value of the land and building is well founded and should be sustained. The land was purchased by Charles R. Macaulay not later than 1905, at a cost of more than $10,000; the building was erected in 1905 and 1906, at a cost of more than $150,000 and was kept in good repair by Macaulay until August 1, 1912, when it was sold by him to the corporation for stock of the par value of $150,000. The evidence convinces us that the land and the building in question had fair market values of $10,000 and $140,000, respectively, on August 1, 1912, and March 1, 1913. Taxpayer should, therefore, be permitted to include in invested capital, on account of this land and this building, the amount of $150,000, and to deduct in the year 1919 for depreciation of the building an amount based upon a valuation of $140,000 for the building. The evidence, however, does not, in our opinion, substantiate taxpayer's contention that a deduction for wear and tear, and exhaustion, should be allowed on the building at the rate of 3 per cent per annum. In view of the character of the building and the materials of which it is constructed, the conclusion is warranted that an allowance for depreciation at the rate of 2 per cent per annum is reasonable.